[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 24, 2008
THOMAS K. KAHN
CLERK

No. 08-10172
Non-Argument Calendar

_____

D. C. Docket Nos. 07-00105-CV-W-E & 03-81486-WRS

IN RE:

CHARLOTTE TERESA WILLIFORD
a.k.a Charlotte Teresa Dawkin-Williford,
KENNETH WILLIFORD,

Debtors.

_____

KENNETH WILLIFORD,

Plaintiff-Appellant,

versus

CHARLOTTE WILLIFORD,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(September 24, 2008)**

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Kenneth Williford, proceeding pro se, appeals the district court's affirmance of the bankruptcy court's order (1) annulling the automatic stay imposed when Kenneth and Charlotte Williford (jointly, "the Willifords") petitioned for bankruptcy, pursuant to 11 U.S.C. § 326(a)(8); and (2) thereby giving retroactive effect to the divorce decree entered against Kenneth in violation of that automatic stay. For the reasons set forth below, we affirm.

## I.

The Willifords filed a joint voluntary petition for bankruptcy, under Chapter 11, on October 3, 2003. The bankruptcy court confirmed a Chapter 11 Reorganization Plan on January 30, 2006. Kenneth, however, filed a motion to vacate confirmation of the Chapter 11 Reorganization Plan on the grounds of fraud on the bankruptcy court.

Specifically, Kenneth explained that, in April 2003, Charlotte filed for divorce. In October 2003, while the divorce was pending, the Willifords jointly petitioned for bankruptcy. The bankruptcy petition operated as a stay on other proceedings, pursuant to 11 U.S.C. § 362(a)(8). However, on October 31, 2003, two weeks after the Willifords jointly filed for bankruptcy, the circuit court entered

2

a decree of divorce and division of marital property, awarding 100% of the Willifords' marital property to Charlotte. Both the state appellate court and state Supreme Court affirmed the divorce decree. See Williford v. Williford, 945 So.2d 494 (Ala. Civ. App. 2005); Ex parte Williford, 946 So.2d 545 (Ala. 2005). The Willifords' joint bankruptcy attorneys knowingly chose not to inform the bankruptcy court of the divorce proceedings or decree.

Kenneth argued that, because the automatic stay was in effect, the divorce decree and division of marital property was void. Because the Willifords' attorneys failed to inform the bankruptcy court of the divorce proceedings and the division of marital property that occurred in violation of the automatic stay, the Willifords' attorneys committed fraud on the bankruptcy court.

The bankruptcy court heard arguments on the motion at a status conference, at which Kenneth appeared telephonically. Kenneth clarified that he did not wish the bankruptcy court to vacate the Chapter 11 Reorganization Plan, but rather to vacate the divorce decree.

The bankruptcy court explained that it could: (1) annul the automatic stay and validate the divorce decree, pursuant to 11 U.S.C. § 362(d)(1); (2) declare the divorce decree void for violating the automatic stay and remand the case to the circuit court to re-divide the marital property; or (3) declare the divorce decree

3

void for violating the automatic stay and re-divide the marital property itself. Kenneth argued that the bankruptcy court should void the divorce decree and divide the marital property itself. Kenneth asserted that the divorce decree was void, because the circuit court entered it in violation of the bankruptcy automatic stay, and unfair, because it gave Charlotte 100% "of everything." Charlotte argued that the bankruptcy court should annul the automatic stay and validate the divorce decree.

The bankruptcy court explained that it was reluctant to re-divide the marital property itself, as it never had "undo[ne]" a divorce case in this manner and was not sure of the extent of his power to do so. It also was wary of giving Kenneth the "redo" in federal court that he apparently sought. To this end, the bankruptcy court noted that Kenneth knew of the automatic stay and nonetheless appealed the divorce decree in state court and did not seek federal relief until the state appellate courts did not reach the result he desired.

The bankruptcy court ultimately denied Kenneth's motion to vacate and annulled the automatic stay to validate the divorce decree entered by the circuit court. The bankruptcy court acknowledged that the divorce proceedings and the divorce decree violated the automatic stay, such that the divorce decree was void. The bankruptcy court also acknowledged, however, that it had the discretion to

annul the automatic stay and, thereby, give retroactive effect to the divorce decree. The bankruptcy court determined that this was the best course of action. It reasoned that Kenneth voluntarily proceeded with the divorce proceedings knowing that they violated the automatic stay and giving him a federal court "do over" would violate the principle of comity and waste judicial resources. Also, "[t]he overriding interest of the bankruptcy courts in such proceedings [was] to protect the interests of creditors who could be harmed by collusive or fraudulent activities in connection with the division of marital property," and this interest was not implicated by the instant, legitimate divorce proceedings and no creditors were harmed.[1]

Kenneth filed a motion for reconsideration, arguing that the bankruptcy court lacked good cause to validate the divorce decree because it was not fair and equitable. The bankruptcy court heard arguments on the motion at a hearing, at which Kenneth appeared telephonically and reiterated his arguments on the fairness of the divorce decree. The bankruptcy court denied without opinion the

---

[1] The bankruptcy court acknowledged that Kenneth was not interested in vacating the Chapter 11 Reorganization Plan, but nonetheless reasoned that the plan should not be revoked in any event because the parties had not committed fraud on the court by making a false statement regarding the divorce proceedings. Specifically, the bankruptcy court noted that, on June 29, 2005, seven months before the Chapter 11 Reorganization Plan was confirmed, the Willifords filed an Amended Disclosure Statement with the bankruptcy court notifying it that Charlotte had petitioned for divorce and that the circuit court had entered a divorce decree awarding Charlotte 100% of the estate.

motion for reconsideration.

Kenneth appealed the bankruptcy court's order to the district court. A magistrate judge recommended affirming the order of the bankruptcy court. The magistrate noted that the divorce decree was void for violating the automatic stay, but concluded that the bankruptcy court did not abuse its discretion in annulling the automatic stay.

The magistrate reasoned that the automatic stay was designed to protect the debtor from the pressure of financial collection activities and any creditors from the potential premature disbursement of the debtor's estate. The instant annulment did not disserve either of these purposes. The divorce petition was filed before the bankruptcy petition, and Kenneth voluntarily appealed the divorce decree, such that the offending proceeding was under way well before the automatic stay and any work that Kenneth did in connection with this proceeding was voluntary. Also, the divorce decree did not harm any creditors because it gave all of the marital property to Charlotte, who was liable to the creditors.

The district court conducted a de novo review and adopted and affirmed the magistrate's recommendation over Kenneth's objections.

**II.**

We review the bankruptcy court's decision to annul an automatic stay for an

6

abuse of discretion.  In re Dixie Broadcasting, Inc., 871 F.2d 1023, 1026 (11th Cir. 1989).  Pursuant to § 362(a)(8), an automatic stay on most proceedings goes into effect upon commencement of a bankruptcy proceeding.  The automatic stay remains in effect until, inter alia, the earliest of the close or dismissal of the bankruptcy case.  11 U.S.C. § 362(c)(2).

The automatic stay serves a dual purpose: (1) relieving the debtor from added financial pressure during the pendency of bankruptcy proceedings, and (2) protecting creditors by preventing the premature disbursement of the bankruptcy debtor's estate.  Carver v. Carver, 954 F.2d 1573, 1576 (11th Cir. 1992).  Regarding the latter purpose, we have explained that, "[w]ithout [an automatic stay], certain creditors would be able to pursue their own remedies against the debtor's property" and that  "[t]hose [creditors] who acted first would obtain payment of the claims in preference to and to the detriment of other creditors."  Id.

"Actions taken in violation of the automatic stay are void and without effect."  United States v. White, 466 F.3d 1241, 1244 (11th Cir. 2006).  Pursuant to § 362(d)(1), however, on the request of an interested party and after notice and a hearing, the bankruptcy court may annul the automatic stay "for cause."  An annulment operates retroactively to validate actions taken after the petition for

bankruptcy was filed. In re Albany Partners, Ltd., 749 F.2d 670, 675 (11th Cir. 1984).

Generally, we have advised that, "limited to its proper role, the bankruptcy court will not duplicate the functions of state domestic relations courts, and its rulings will impinge on state domestic relations issues in the most limited manner possible." In re Harrell, 754 F.2d 902, 907 (11th Cir. 1985) (regarding a Chapter 7 debtor's argument that the bankruptcy court erred in holding that his obligation to pay accrued alimony arrearages and postmajority child support and educational expenses was not dischargeable).

## III.

The bankruptcy court did not abuse its discretion in annulling the automatic stay and, thereby, validating the divorce decree. See In re Dixie Broadcasting, Inc., 871 F.2d at 1026. It is undisputed that the divorce decree violated the automatic stay and was, therefore, void absent the annulment. See White, 466 F.3d at 1244. The bankruptcy court, however, reasonably exercised its discretion to grant an annulment for cause. See 11 U.S.C. § 362(d)(1).

When the true purpose of Kenneth's motion to vacate confirmation of the Chapter 11 Reorganization Plan became evident and Charlotte requested an annulment of the automatic stay, the bankruptcy court heard Kenneth's arguments

in opposition of this course of action. See 11 U.S.C. § 362(d)(1) (requiring that a party request the annulment and that the bankruptcy court hold a hearing on the matter). The bankruptcy court acknowledged its full array of options. The bankruptcy court ultimately granted Charlotte's request, however, on the grounds that the instant situation did not disserve the dual purposes of the automatic stay and that the bankruptcy court was hesitant to interfere with the circuit court's jurisdiction over family affairs. See Carver, 954 F.2d at 1576; In re Harrell, 754 F.2d at 907.

To this end, the record supports the bankruptcy court's decision. The record demonstrates that the divorce petition was filed long before the bankruptcy petition and that Kenneth knew of the divorce petition when he agreed to file for bankruptcy, such that the divorce decree was not the product of the sort of added financial stressor that the automatic stay provision contemplated. See Carver, 954 F.2d at 1576. The record also demonstrates that the Willifords' creditors were not harmed by the invalid proceeding in the manner contemplated by the automatic stay proceeding, as (1) the divorce appears to be legitimate, rather than a sham to shield the marital property in question from Kenneth's creditors, and (2) the Willifords' creditors would be able to pursue remedies against the marital property awarded to Charlotte. Because the bankruptcy court held a hearing, considered all

of its options, and chose a course of action that comported with the purposes of the automatic stay, it did not abuse its discretion in annulling the automatic stay. See In re Dixie Broadcasting, Inc., 871 F.2d at 1026.

The fact that the divorce decree itself was inequitable in Kenneth's view does not alter our conclusion, as it was not unreasonable for the bankruptcy court to decline to interfere with the circuit court's division of marital property and as two appellate courts, including the state Supreme Court, already had affirmed this division. See In re Harrell, 754 F.2d at 907; Williford, 945 So.2d 494; Ex parte Williford, 946 So.2d 545.

Likewise, the fact that Kenneth appeared telephonically and without counsel does not alter this conclusion, as the bankruptcy court afforded Kenneth ample opportunity to voice his arguments, both at an initial hearing and at a hearing on Kenneth's motion to reconsider. Accordingly, we affirm.

**AFFIRMED.**