In re Staci Deannine TAYLOR, Debtor.

Neil C. Gordon, Chapter 7 Trustee for the Estate of Staci Deannine Taylor, Plaintiff,

v.

Staci Deannine Taylor, American Equity Mortgage Inc., and Deutsche Bank, as Trustee, Defendants.

Bankruptcy No. 05–79079–MGD.
Adversary No. 07–6565–MGD.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 18, 2010.

Michael F. Holbein, Neil C. Gordon, Arnall Golden Gregory LLP, Atlanta, GA, for Plaintiff.

Staci Deannine Taylor, Stone Mountain, GA, pro se.

American Equity Mortgage Inc., pro se.

Paul G. Wersant, Morris Schneider Prior, et al., Atlanta, GA, for Defendant, Deutsche Bank.

*ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

DIEHL.

This matter is before the Court on cross motions for summary judgment. (Docket Nos. 27 & 43). This is a core proceeding under 28 U.S.C. § 157(b)(2), and jurisdiction and venue are proper. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is denied, and Defendant Deutsche Bank's Motion for Summary Judgment is granted.

The Chapter 7 Trustee ("Trustee") commenced this adversary proceeding against Debtor and two mortgage companies, America Equity Mortgage, Inc. and Deutsche Bank, by filing a six-count complaint. After several consensual extensions of the deadline to file motions for summary judgment, Trustee filed a Motion for Partial Summary Judgment against Deutsche Bank ("Deutsche") as to Count V, seeking actual damages and sanctions against Deutsche for a willful violation of the automatic stay pursuant to 11 U.S.C. § 362(h)(1). (Docket No. 27). Deutsche filed a response to Trustee's Motion for Partial Summary Judgment and filed its own Motion for Summary Judgment as to Count V, willful violation of the automatic stay, and Count VI, avoidance of Deutsche's lien based on alleged improper attestation of the Debtor's security deed, allowing Trustee to exercise its avoidance powers pursuant to 11 U.S.C. § 544. (Docket No. 43). Trustee subsequently filed a response to Deutsche's Motion for Summary Judgment as to Count V only, and Deutsche filed a reply. (Docket Nos. 44 & 46).

In accordance with Rule 56 of the Federal Rules of Civil Procedure, applicable to

this Court pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, the Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "Material facts" are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Lastly, the moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982).

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## I. FACTS

This adversary proceeding involves the unauthorized postpetition sale of Debtor's residence. The material facts are undisputed; therefore, summary judgment is appropriate. Facts pertinent to Count VI will follow Count V's material facts.

On October 3, 2005, Staci Deannine Taylor ("Debtor") filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. (Case No. 05–79079).

On January 20, 2006 Mathew A. Schuh of Morris, Schneider & Prior filed a motion for relief from stay on behalf of Deutsche ("Deutsche Stay Relief Motion"), seeking authority to proceed with non-judicial foreclosure of the Debtor's residence at 416 Orchards Walk, Stone Mountain, Georgia (the "Property"). (Case No. 05–79079, Docket No. 12). A consent order denying Deutsche's Stay Relief Motion was entered March 17, 2006, which provided a payment plan for Debtor to bring the postpetition mortgage current. (Case No. 05–79079, Docket No. 20). The consent order also provided that upon Debtor's default on the payment plan, Deutsche could submit an affidavit and obtain an Order converting the case to Chapter 7 without further hearing. *Id.* On August 9, 2006, David S. Whitridge of Morris, Schneider & Prior on behalf of Deutsche filed an Affidavit of Default, Amended Motion for Relief from Stay, and a Motion for Order Converting Case to Chapter 7, notifying the Court of Debtor's default under the terms of the consent order. (Case No. 05–79079, Docket Nos. 22–24). On September 8, 2006, an Order converting the case to Chapter 7 was entered; the conversion order was prepared and presented by Mr. Whitridge on behalf of Deutsche. (Case No. 05–79079, Docket No. 25). Also on September 8, 2006, Trustee was appointed as interim trustee. (Trustee's Statement of Facts ("SOF") ¶ 7). Deutsche was not granted relief from stay, and the Chapter 13 Trustee was ordered to cease making any disbursements to Deutsche. (Case No. 05–79079, Docket No. 25).

On September 22, 2006, Debtor filed a Motion for Voluntary Dismissal, a Motion to Sell Real Estate, and a Motion to Reconvert or Vacate the Conversion. (Case No. 05–79079, Docket Nos. 27–29). The certificates of service accompanying Debtor's motions did not include service on

310

Trustee. (Case No. 05–79079, Docket Nos. 27–29). On October 18, 2006, Debtor's Motion to Sell and Motion to Reconvert came on for hearing, and despite Trustee not being served with the Motions, he appeared at the hearing in opposition to the motions. (Trustee's SOF ¶ 11). At this hearing, Trustee asserted that his intention was to seek avoidance of Deutsche's security deed on the Property for the benefit of the estate based on his title research. Debtor's Motion to Sell and Motion to Reconvert were denied. (Case No. 05–79079, Docket No. 36).

On September 21, 2006, prior to the hearings on Debtor's Motion to Sell and Motion to Reconvert, and without Court authority, Debtor sold the Property to the purchaser named in Debtor's September 22, 2206 Motion to Sell. (Trustee's SOF ¶ 12). Steven Webster P.A. acted as closing agent for the new lender, Prime Equity, on this sale of the Property. (Deutsche's SOF ¶ 1). Debtor received $20,262.24 at the closing, representing her equity in the Property. (Trustee's SOF ¶ 13; Deutsche's SOF ¶ 5).

Debtor had previously requested and received payoff information on the Deutsche note through an automated online request from Deutsche's servicer, Litton Loan Servicing ("Litton"). The closing attorney sent a payoff check to Litton for the balance of the loan. The payoff funds were applied to Debtor's account. Deutsche only received funds equal to the payoff amount of its note. (Deutsche's SOF ¶ 4). Deutsche never received any portion of the $20,262.24 in equity funds given to Debtor. (Deutsche's SOF ¶ 5). The funds received by Deutsche represent what Trustee would have been required to distribute in a liquidation case. (Deutsche's SOF ¶ 6). The application of the payoff funds resulted in satisfaction of Debtor's note and

Deutsche's release of its security deed on the Property.

On October 30, 2006, Trustee received a letter from Deutsche Bank that its mortgage had been paid off. (Trustee's Motion for Summary Judgment; Docket No. 28, pg. 4). On October 31, 2006, Trustee conducted the meeting of creditors, and at the conclusion of the meeting, Trustee became the permanent Trustee. Id. at 5. At the meeting of creditors, Debtor stated that she had already spent some of the funds but agreed to remit $15,000.00 to Trustee's office the following day. Debtor did not bring the funds to Trustee's office. An Order compelling Debtor to turnover funds was entered November 21, 2006. (Case No. 05–79079, Docket No. 48). Trustee recovered $2,900.00 from Debtor by March 27, 2007. Trustee initiated this adversary proceedings on September 28, 2007, and Deutsche was served with process of October 4, 2007.

With respect to the Count VI, the parties agree that precise copies of Deutsche's recorded security deed and assignment are attached to Deutsche's answer. (Deutsche's SOF ¶ 7; Docket No. 4). Deutsche's recorded security deed bears a clearly visible witness signature and notary attestation, and Deutsche's recorded security deed was visible in the Property's record of title. (Deutsche's SOF ¶¶ 8 & 9).

## II. DEUTSCHE WILLFULLY VIOLATED THE AUTOMATIC STAY, BUT NO AWARD OF DAMAGES OR SANCTIONS IS WARRANTED.

To determine whether Deutsche willfully violated the automatic stay, the Court must first determine whether any actions taken by Deutsche constitute a violation of the automatic stay. If there is a violation, then whether the violation was willful un-

der § 362(h)(1)[1] will be determined. Trustee's ability to recover any damages under § 362(h)(1) will also be assessed.

## A. Deutsche violated § 362(a)(6).

■ At the commencement of a bankruptcy case, an estate comprised of "all legal or equitable interests of the debtor in property" is created. 11 U.S.C. § 541(a). A debtor's real property constitutes "property of the estate," and proceeds from the sale of Property also qualify as property of the estate. *Id.* The filing of a voluntary petition under the Bankruptcy Code imposes an automatic stay applicable to all entities that prohibits certain actions against the debtor or against property of the bankruptcy estate. 11 U.S.C. § 362(a). The automatic stay is considered "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 503, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986). The scope of the automatic stay is broad and specifically prohibits, among other things "any act to collect, assess, or recover a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

■ Upon knowledge of the bankruptcy proceeding, the automatic stay requires a creditor to cease any steps to begin or maintain any action against property of the estate. 11 U.S.C. § 362(a); *Williford v. Williford (In re Williford)*, 294 Fed.Appx. 518, 521 (11th Cir.2008). "The automatic stay serves a dual purpose: (1) relieving the debtor from added financial pressure during the pendency of bankruptcy proceedings, and (2) protecting creditors by preventing the premature dis-

bursement of the bankruptcy debtor's estate." *Id.* (citing *Carver v. Carver*, 954 F.2d 1573, 1576 (11th Cir.1992)). A creditor with notice of the bankruptcy has an affirmative duty to ensure that the automatic stay is not violated. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir.2002)(holding that Section 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions); *Spagner v. Latham, Stall, Wagner, Steel & Lehman, P.C., (In re Spagner)*, 2005 U.S. Dist. LEXIS 46883, 2005 WL 1950364 (W.D.Okla. Aug.15, 2005)(holding that creditor has affirmative obligation to cease garnishment after learning of bankruptcy filing); *Spinner v. Cash In A Hurry, LLC (In re Spinner)*, 398 B.R. 84, 95 (Bankr.N.D.Ga.2008); *Mitchell Constr. Co. v. Smith (In re Smith)*, 180 B.R. 311, 319 (Bankr.N.D.Ga.1995).

There is no dispute that an unauthorized sale of estate property occurred in this case. The sale of the Property was in violation of a court order and without court authority. Property of the bankruptcy estate, the proceeds from the sale of the Property, were distributed without regard to the Bankruptcy Code. While the Court is troubled by what transpired in this case, general allegations against Deutsche, characterizing Deutsche as "participating" in the unauthorized sale of estate property or "playing a role in the sale," without specific proof and without resulting damages are not sufficient to impose liability on this actor. The Court must specifically determine whether Deutsche violated § 362(a)(6) with the following acts: (1) providing Debtor with payoff information on her loan, (2) accepting a postpetition payoff and applying the funds to a prepeti-

---

1. Section 362(h)(1) is the applicable law for this adversary proceeding. The underlying bankruptcy case was filed October 3, 2005 prior to the effective date of the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005. Section 362(k)(1) is the current provision regarding willful violations of the stay.

tion debt, and the (3) resulting satisfaction and release of Deutsche's security deed.

### 1. Providing Debtor with payoff information pertaining to her loan does not violate the automatic stay.

■ Trustee asserts that Deutsche violated the automatic stay when Debtor received loan payoff information on her loan through an automated online request to its servicer, Litton. In support of this position, Trustee cites to cases that hold merely providing payoff information violates the automatic stay. *E.g., In re Sullivan,* 367 B.R. 54 (Bankr.N.D.N.Y.2007). The Court disagrees. There are many legitimate reasons for a debtor to need information regarding the balance owed on her loan: a debtor may be pursuing a refinance of her loan, a debtor may be reviewing a claim filed in the case; or a debtor may want to sell her property through an appropriate court authorized sale. In short, providing Debtor with her payoff information through an online request, or otherwise, does not violate the automatic stay under § 362(a)(6). In fact, refusing to providing such information to a debtor might constitute a stay violation. This Court agrees with Judge Wedoff's analysis in *In re Redmond,* which held that letters or statements, including the lender's position and the status of the loan, should not be construed as an improper demand for payment. *In re Redmond,* 380 B.R. 179, 186–87 (Bankr.N.D.Ill.2007); *see also In re Mosby,* 244 B.R. 79, 87 n. 13 (Bankr. E.D.Va.2000); *In re LaFave,* 9 B.R. 859 (Bankr.E.D.Mich.1981). Nothing in the record indicates that Debtor's online request is an attempt by Deutsche to collect its debt or implicates Deutsche's influence or instruction to Debtor to sell the Property.

### 2. Deutsche's application of the payoff funds to Debtor's account violates § 362(a)(6).

■ Trustee also asserts that Deutsche's acceptance of the payoff check and application of those funds to Debtor's account constitute a violation of the automatic stay under § 362(a)(6). The Court will not hold that merely accepting voluntary payments from a debtor, without more, violates the automatic stay. *See Rodriguez v. Countrywide Home Loans (In re Rodriguez),* 421 B.R. 356, 367 (Bankr.S.D.Tex.2009); *Zombro v. SunTrust Bank (In re Zombro),* 2008 Bankr.LEXIS 1213, 2008 WL 1752211 (Bankr.E.D.Va. Apr. 14, 2008). In fact, the Bankruptcy Code in § 524(f) explicitly permits a debtor to make voluntary payments to a creditor on a discharged debt.

However, Deutsche's application of a postpetition payment to its prepetition debt is problematic. The Supreme Court's setoff analysis from *Citizens Bank of Maryland v. Strumpf* is instructive here. In *Strumpf,* a bank's five day administrative hold, where the bank refused to pay withdrawals from the checking account that would reduce the balance below the bank's asserted claim amount, was held not to violate the automatic stay. *Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). The bank filed a motion for relief from stay following the five-day administrative hold. *Id.* at 18, 116 S.Ct. 286. The Supreme Court's determination that the bank had not violated the automatic stay was predicated, in part, on the bank's prompt and non-permanent actions. *Id.* at 19, 116 S.Ct. 286.

Here, Deutsche did not attempt to hold or freeze the funds, and no motion for relief from stay was filed. Instead, upon Litton's receipt of the payoff check, the funds were applied to the loan. Deutsche's actions, whether directly taken

by Deutsche or by its servicing agent, were taken with an intent of permanence. Also in contrast to the bank's action in *Strumpf*, Deutsche selected to take only informal action by sending a letter to Trustee informing him of the loan's payoff. Applying the *Strumpf* analysis, Deutsche's permanent action without any attempt to seek court authority to apply postpetition funds on a prepetition debt constituted a violation of the automatic stay under § 362(a)(6).

Deutsche's actions in this case go beyond the mere receipt of payment. Deutsche took an additional affirmative step with the payoff check sent to Litton. It applied the payments to the loan. That action constitutes a violation of the stay because it allows Deutsche to recover its prepetition claim against Debtor, which is explicitly stayed by § 362(a)(6). *Krivohlavek v. Boys Town Fed. Credit Union (In re Krivohlavek)*, 405 B.R. 312, 315–316 (8th Cir. BAP 2009).

### 3. Satisfying and releasing Deutsche's security deed violates § 362(a)(6).

■ Deutsche's satisfaction and release of its security deed also violates the automatic stay under § 362(a)(6). Deutsche's release of the security deed squarely fits within § 362(a)(6)'s prohibition against recovery on a prepetition claim without court authority.

### B. Deutsche's acts of applying payoff funds and releasing its security deed were intentional.

■ Since there has been a violation of the automatic stay with respect to the application of the payoff funds and the satisfaction and release of Deutsche's security deed, the next issue for the Court to examine is whether the violation was willful. Section 362(h)(1) instructs that "an individual injured by any willful violation" of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h)(1). The test for determining whether a violation of the automatic stay is willful is: (1) whether the creditor knew of the stay, and (2) whether creditor's actions, which violated the automatic stay, were intentional. *Jove Eng'g v. IRS*, 92 F.3d 1539, 1555–57 (11th Cir.1996). To establish willfulness, the plaintiff must show that the defendants "intentionally committed the violative act." *Id.* at 1555. The plaintiff does not need to show a specific intent to violate a court order but merely an intention to take the action about which the complaint is made. *Id.; In re Xavier's of Beville, Inc.*, 172 B.R. 667, 671 (Bankr.M.D.Fla.1994). The motivation or belief of the party charged with violating the automatic stay is irrelevant to the requirement that the action be taken willfully. The law in this circuit is clear that willfulness is established by the intentional commission of "the violative act, regardless of whether the violator specifically intended to violate the stay." *Jove Eng'g v. IRS*, 92 F.3d at 1555; *see also In re Flack*, 239 B.R. 155, 162 (Bankr. N.D.Ohio 1999) ("To establish a willful violation, it must be shown that the party knew of the bankruptcy filing and then took some action, without regard to whether the party had specific intent to violate the stay or acted in good faith based upon a mistake of law or a legal dispute regarding its rights.").

■ First, neither party disputes that Deutsche had knowledge of Debtor's bankruptcy. Deutsche's extensive participation in Debtor's bankruptcy case clearly demonstrates actual notice. Second, the application of the payoff funds against the loan account was an intentional act. Likewise,

Deutsche's release of the security deed constitutes an intentional, affirmative act.

■■■ Drawing any distinctions between Deutsche and Litton's actions is not material. With certain exceptions not applicable here, knowledge acquired by an agent acting within the scope of its agency is imputed to the principal for purposes of determining whether the principal willfully violated the automatic stay; and under this doctrine, knowledge of a loan servicer can be imputed to the lender. *In re Crawford,* 388 B.R. 506, 519 (Bankr.S.D.N.Y. 2008) (notice to loan servicer Owen Federal Bank FSB imputed to lender HSBC Bank for purposes of determining whether a willful violation of the stay occurred); *Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline),* 420 B.R. 541, 548 (Bankr. D.N.M.2009).

### C. Recovery under § 362(h) is not appropriate for Trustee.

■■■ Although Deutsche's application of the payoff funds and satisfaction and release of its security deed constitute willful violations of the automatic stay, Trustee is not entitled to recover under § 362(h). Section 362(h)'s award of actual damages is predicated on "an *injured* individual." 11 U.S.C. § 362(h)(1)(emphasis added). Actual damages are available only upon a showing that an individual suffered an injury. *Id.; In re Bucciarelli,* 2008 Bankr.LEXIS 3819, 2008 WL 7874771 (Bankr.N.D.Ga. July 21, 2008); *Hutchings v. Ocwen Federal Bank, FSB (In re Hutchings),* 348 B.R. 847 (Bankr.N.D.Ala. 2006) ("The plain language of section 362(h) of the Bankruptcy Code explicitly requires, as a prerequisite to maintaining such an action, that a debtor must have first been 'injured' by the stay violation."). "[A]bsent proof of injury, a technical violation of the stay, no matter how willful, is not enough to support an award of damages." *In re Palumbo Family Ltd. P'ship,* 182 B.R. 447, 471 (Bankr.E.D.Va. 1995).

Setting aside, for the moment, the issue of whether Trustee qualifies as an individual under § 362(h), Trustee fails to demonstrate any injury to the bankruptcy estate, which precludes recovery of actual damages. Trustee seeks recovery of the $20,262.24 in equity funds, in addition to attorneys' fees and costs of prosecuting this action. However, Deutsche never received any portion of the equity funds. The evidence shows that Debtor received the equity funds at the closing and that Deutsche had no prior knowledge of the sale or the closing. The record is devoid of any evidence that Deutsche or Litton received any funds in excess to what Trustee would have been required to distribute to Deutsche in a liquidation. Deutsche received an amount equal to the loan payoff amount.

Trustee's theory of injury is analogous to the last clear chance tort doctrine. Trustee doesn't assert that Deutsche received any more than it was entitled to as an oversecured creditor, just that Deutsche's failure to move for relief from stay somehow prevented Trustee from recovering the equity funds provided directly to Debtor at the Property's closing. Trustee explains its injury as follows:

> Had Deutsche brought the proposed unauthorized post-petition sale of the Property to the attention of the Plaintiff, the Court, their bankruptcy counsel, or closing attorney, the sale would surely have been stopped and the estate would have sold the Property and paid all unsecured creditors of the Debtor.

(Trustee's Brief in Support of Plaintiff's Motion for Summary Judgment, Docket No. 28, p. 9). Trustee's theory is not supported by the facts. No action by Deutsche could have stopped the sale.

There is no evidence before the Court that demonstrates Deutsche had any knowledge of the Debtor's unauthorized sale of the property until *after* the sale closed and it had received its payoff. No evidence shows that Deutsche was present at the closing or had any communication regarding the sale in advance of Litton receiving the payoff check from the closing attorney. The Court finds no facts in support of a theory that would have allowed Deutsche to intercept or halt the sale of the Property. The evidence before the Court does not support Trustee's theory of injury or the general allegations made regarding Deutsche's "active participation" in the unauthorized sale of the Property.

The Court will not find injury to the bankruptcy estate based on this theory. In fact, the evidence in the record shows that Deutsche did notify Trustee of its receipt of funds on October 30, 2006. The undisputed facts include that the Debtor alone received the $20,262.24 in equity funds at the closing on September 21, 2006. The Court is not persuaded by Trustee's argument that Debtor's request for payoff information may imply or should have implied knowledge to Deutsche of Debtor's intention to sell the Property without Court authority. The evidence shows that Debtor obtained payoff information on her loan by way of an automated online request. Debtor's payoff request alone is grossly insufficient to imply any participation in the unauthorized sale of estate property.

Further, attorneys' fees are not compensable with an injury directly resulting from Deutsche's willful violation of the automatic stay. "[B]y its terms section 362(h) does not authorize an award of 'actual damages, including costs and attorneys' fees ...' to an individual who has not been injured by a willful violation of the stay." *In re Hutchings*, 348 B.R. at 882.

Trustee's injury theory is also undercut by his own actions. Trustee received Deutsche's letter stating that it had received payoff on its loan on October 30, 2006. Trustee made no subsequent demand for turnover. Trustee's actions were focused on recovery from Debtor. The Court does not question this strategy since Debtor alone was in receipt of the equity funds. However, that does not change the fact that no action was taken against Deutsche until Trustee filed the complaint in the above-styled action on September 28, 2007. The Court considers these actions consistent with ratification of Deutsche's use of the funds or an implied waiver of Trustee's stay violation claim against Deutsche.

In addition to Trustee's lack of injury, recovery under § 362(h) is limited to individuals. The Bankruptcy Code does not define individual. "[W]hile a trustee can be an 'individual' if the trustee is a natural person (as opposed to, e.g., a corporate entity), the individual's status as trustee precludes any finding that the trustee suffered any damages as an individual, because any harm suffered in the form of costs and attorney's fees is actually incurred by a thing, viz., the bankruptcy estate, and not by the trustee as a natural person." *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 192 (9th Cir.1995). The Eleventh Circuit has narrowly construed the term, 'individual' within the context of § 362(h), holding that a corporation did not qualify as an individual under § 362(h). *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1551 (11th Cir.1996). The Eleventh Circuit noted that the word's ordinary meaning should control, and that individual means a natural person. *Id.; see also Gordon v. Olufelo (In re Olufelo)*, 2009 Bankr.LEXIS 4040 *10, 2009 WL 6498509 *3–4 (Bankr.N.D.Ga. May 22, 2009); *In re*

316

*Lickman*, 297 B.R. 162, 196 (Bankr. M.D.Fla.2003).

### D. Sanctions against Deutsche are not necessary or appropriate under § 105.

Courts have found that otherwise ineligible parties under § 362(h) may recover sanctions under § 105. If the automatic stay provision is violated, courts may award damages under the separate statutory contempt power of § 105. *E.g., In re Pace*, 67 F.3d 187, 193 (9th Cir.1995) (Damages in the form of costs and attorney's fees for willful violations that are not available to non-individual under § 362(h) are available under § 105(a) as a sanction for ordinary civil contempt); *In re Chateaugay*, 920 F.2d 183, 186–87 (2d Cir. 1990) ("For other debtors [who are not natural persons], contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay."); *In re Olufelo*, 2009 Bankr.LEXIS 4040 * 10, 2009 WL 6498509 *3–4; *In re Lickman*, 297 B.R. at 196.

In addition to the inherent contempt powers of the court, § 105(a) provides the bankruptcy court with independent statutory authority "to award monetary and other forms of relief for automatic stay violations to the extent such awards are 'necessary or appropriate' to carry out the provisions of the Bankruptcy Code." *Hardy v. U.S. (In re Hardy)*, 97 F.3d 1384, 1389–1390 (11th Cir.1996) (quoting *Jove Eng'g v. IRS*, 92 F.3d at 1553–54).

Any violation of the automatic stay is of great concern to the Court, as is the unauthorized sale of estate property. Deutsche's failure to seek relief from the stay to apply proceeds from property of the estate in satisfaction of its prepetition security deed abrogates the role of the Court, the power of the automatic stay for debtors, and the bankruptcy system as a whole. Deutsche's actions, however, must be assessed within the facts of this particular case.

Civil contempt sanctions are designed to "(1) compensate the complainant for losses and expenses it incurred because of the contemptuous act, and (2) coerce the contemnor into complying with the court order." *Jove Eng'g, Inc. v. IRS*, 92 F.3d at 1557. Here, Trustee seeks recovery of the equity funds given directly to Debtor at the closing. Deutsche's acts of applying the payoff funds and satisfying the prepetition security deed have no causal link to recovery of the equity funds. Additionally, no coercion, at this point, more than three years after receipt and application of the funds, is warranted. Great weight is also given to the fact that this unauthorized sale was largely a result of Debtor's individual improper actions, aided by seemingly complicit actions by the closing attorney and new lender. Given that there is no evidence of Deutsche's involvement in or knowledge of the sale, that Deutsche received no added benefit from application of the funds, and that the bankruptcy estate was not harmed in any monetary way by Deutsche's actions, sanctions are neither necessary nor appropriate in this instance.

The determination to not award sanctions against Deutsche is based on an assessment of both the action of Deutsche and Trustee. The Court is not commending Deutsche for its letter received by Trustee on October 30, 2006 as equivalent to a relief from stay motion or formal notice of satisfaction of its security deed filed with the Court, but the letter does provide actual notice to Trustee of the unauthorized sale of estate property. Trustee's choice to not pursue Deutsche, near the time of the unauthorized transaction, weighs against any finding that sanc-

tions against Deutsche are necessary or appropriate to preserve the bankruptcy estate. Deutsche did not receive more than Trustee would have distributed. No evidence is offered to show that Deutsche participated in the unauthorized sale. No evidence suggests that Deutsche could have stopped the sale. The Court does not condone Deutsche's failure to seek relief from the automatic stay, yet Trustee's pursuit of Deutsche for the equity funds seems misdirected. Under the facts of this case, sanctions against Deutsche are neither necessary nor appropriate to protect the bankruptcy process.

Although Deutsche willfully violated the automatic stay under § 362(a)(6), for the reasons set forth above, Trustee is not entitled to judgment as a matter of law and there is no award of damages pursuant to § 362(h)(1). Therefore, Trustee's Motion for Partial Summary Judgment will be denied and Deutsche's Motion for Summary Judgment will be granted as to Count V.

## III. DEUTSCHE'S SECURITY DEED IS NOT SUBJECT TO AVOIDANCE

Deutsche also moves for summary judgment as to Count VI of the complaint, seeking a determination that Trustee could not avoid its mortgage under § 544. Trustee's claim is that Deutsche's security deed is subject to avoidance under applicable Georgia law on the basis that it was improperly attested and would not provide constructive notice to a hypothetical bona fide purchaser. *See Kim v. Terrace Mortgage Co. (In re Kim)*, 571 F.3d 1342, 1345 n. 3 (11th Cir.2009). The complaint alleged that the security deed failed to comply with the Georgia law requirement that Deutsche's security deed be attested to by an official witness. O.C.G.A. §§ 44–2–15 & 44–14–33. Specifically, Trustee alleged

that the security deed was missing a notary seal; and, therefore, failed to satisfy Georgia's attesting official witness requirement.

Section 544(a) provides "strong-arm" powers to the trustee, allowing the trustee to set aside or avoid transfers of the debtor's real property. Section 544(a)(3) grants the trustee powers of a hypothetical bona fide purchaser. State law determines who may qualify as a bona fide purchaser of real property. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *In re Hedrick*, 524 F.3d 1175, 1182 (11th Cir. 2008).

Georgia law requires that all deeds conveying land must be recorded in the office of the clerk where the land is located. O.C.G.A. § 44–2–1. "[I]n order to admit deeds to secure debt ... they shall be attested or proved in the manner prescribed by law for mortgages." O.C.G.A. § 44–14–61. Mortgages and deeds to secure debt are admitted to record when they are "attested by or acknowledged before an officer as proscribed for attestation or acknowledgment of deeds of bargain and sale; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness." O.C.G.A. § 44–14–33. An officer includes a judge of a municipal court, "a magistrate [or] a notary public...." O.C.G.A. § 44–2–15.

Deutsche's security deed complies with all the Georgia law requirements for attestation, including a properly attesting official witness. With no defect to potentially invalidate Deutsche's recorded inter-

est in the Property, Trustee has no basis to deny notice of Deutsche's interest in the Property and no opportunity to avoid Deutsche's security deed as a hypothetical bona fide purchaser under § 544(a)(3).

In response to Deutsche's Motion for Summary Judgment, Trustee admits that: "Precise copies of Deutsche Bank's recorded Security Deed and Assignment are attached to its Answer." (Deutsche's SOF ¶ 7; Trustee's Response to Deutsche's SOF ¶ 7). The parties also agree that Deutsche's security deed is visible in a title search on the Property. Trustee only denies that the security deed bears a clearly visible notary attestation. Since Trustee admitted that the referenced recorded security deed is a precise copy, Deutsche has met its burden under the summary judgment standard. Deutsche's security deed bears a visible notary seal, in addition to satisfying the other attestation requirements for security deeds under Georgia law. The precise copy of the security deed attached to Deutsche's answer includes the signature of James Doster and the corresponding notary seal, which states that Mr. Doster's commission expires July 4, 2006 and notes Cobb County, Georgia.

Trustee's denial regarding the visibility of the notary seal does not create a dispute of material fact because if the admitted true copy of the security deed was introduced at trial, a reasonable jury could not find that the notary seal is not clearly visible. Similarly, no reasonable jury could return a verdict for Trustee. Therefore, Deutsche is entitled to judgment as a matter of law as to Count VI and Deutsche's security deed is not avoidable. Accordingly, it is

**ORDERED** that Trustee's Motion for Summary Judgement is hereby **DENIED.**

It is **FURTHER ORDERED** that Defendant's Motion Summary Judgment is hereby **GRANTED.**

The Clerk is directed to serve a copy of this Order on Trustee, Defendant Deutsche Bank, and their respective counsel.