John T. Laney, III, United States Bankruptcy Judge
This matter comes before the Court on the Motion of the Debtor for Contempt ("the Motion") (Dkt. No. 11). In the Motion, the Debtor contends First Franklin Financial Corp. ("First Franklin") violated the automatic stay by retaining a payment the Debtor made voluntarily on a pre-petition debt and by crediting that payment to its pre-petition claim against the Debtor. The Debtor seeks an order directing the respondent to immediately return the check[1] and an award of actual and punitive damages.
The Court held a hearing on the Motion on August 22, 2018. Both the Debtor and First Franklin appeared at the hearing with counsel. After the parties' presentation of facts and legal arguments, the Court took the matter under advisement. The issue before the Court is whether a creditor violates the automatic stay by retaining and applying funds received after the petition date on account of a pre-petition debt when the Debtor voluntarily provided those funds and the funds are not a part of the bankruptcy estate. Having carefully considered the relevant statutes and the sparse case-law on this issue, the Court, for the reasons set forth below, finds First Franklin's retention and application of the payment does not violate the automatic stay.
JURISDICTION AND VENUE
The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(a). This being a matter concerning the enforcement of the automatic stay, it is a core proceeding and the Court has the authority to enter a final order. 28 U.S.C. § 157. Further, venue is proper pursuant to 28 U.S.C. 1408.
STATEMENT OF FACTS
At the hearing on the Motion, the Parties stipulated the material facts in this dispute. Those facts, as well as others of which the Court took judicial notice, are the following: Sometime prior to filing this case, the Debtor and First Franklin entered into an agreement where First Franklin loaned the Debtor a sum of money and obtained a non-purchase-money security *213 interest in some of the Debtor's personal property. The Debtor filed the petition for relief under Chapter 7 of the Bankruptcy Code on July 18, 2018. (Dkt. No. 1). The Debtor's attorney filed a Motion to Avoid First Franklin's security interest pursuant to 11 U.S.C. § 522(f) on the following day, July 19, 2018. (Dkt. No. 6).[2]
Without consulting his bankruptcy attorney, the Debtor obtained a loan from Kinetic Credit Union ("Kinetic") on July 19, 2018. The Debtor gave the proceeds of this loan, $7,561.01, to First Franklin, intending for First Franklin to apply the funds to the Debtor's pre-petition account. Both parties agree that First Franklin did not request that the Debtor make this payment and neither party introduced evidence indicating that First Franklin facilitated or encouraged the transaction. Rather, Debtor's counsel indicated that the Debtor made the payment on the "advice" of a personal acquaintance who did not have a relationship with First Franklin or Kinetic.
When Debtor's counsel learned that the Debtor made this payment, he attempted to unwind the transaction by requesting First Franklin to remit the funds back to Kinetic. After numerous phone and email conversations, First Franklin refused. The Debtor accordingly filed the Motion.
LEGAL ANALYSIS
As the parties stipulated the material facts of this matter, the issue before the Court is solely one of interpreting the law. As previously stated, the question before the Court is whether a creditor violates 11 U.S.C. § 362 by retaining a voluntary payment from the Debtor[3] and by applying those funds to its pre-petition claim.
Upon filing a petition under the Bankruptcy Code, 11 U.S.C. § 362 stays particular actions against a debtor or the bankruptcy estate. This stay-labeled the "automatic stay" by the Bankruptcy Code-serves two important functions: "(1) relieving the debtor from added financial pressure during the pendency of bankruptcy proceedings, and (2) protecting creditors by preventing the premature disbursement of the bankruptcy debtor's estate." Williford v. Williford (In re Williford) , 294 Fed. Appx. 518, 521 (11th Cir. 2008) (citing Carver v. Carver , 954 F.2d 1573, 1576 (11th Cir. 1992) ).
Of particular relevance to the issue before the Court, the automatic stay prevents "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(6). The Debtor concedes that First Franklin's unsolicited receipt of the check did not violate the automatic stay. The Debtor's primary argument is that First Franklin violated the automatic stay by applying those funds to the Debtor's account and by refusing to remit the funds to Kinetic after being informed of the Debtor's ill-advised payment. The Debtor is right in stating that no section within the Code explicitly creates a right for a creditor to receive voluntarily payments *214 on a dischargeable debt. In 11 U.S.C. § 524(f),[4] however, the Bankruptcy Code does imply that a creditor may receive a voluntary payment on a dischargeable debt. See In re Hellums , 772 F.2d 379, 381 (7th Cir. 1985) ("Debtors who file under [Chapter 7] can dispose of their post-petition earnings as they choose, including voluntary repayment of debts otherwise dischargeable in bankruptcy.") (citing 11 U.S.C. § 524(f) ); Gordon v. Taylor (In re Taylor) , 430 B.R. 305, 312 (Bankr. N.D. Ga. 2010) ("[T]he Bankruptcy Code in § 524(f) explicitly permits a debtor to make voluntary payments to a creditor on a discharged debt."); see also , Davis v. Illinois State Police Fed. Credit Union (In re Davis) , 244 B.R. 776, 787 (Bankr. N.D. Ill. 2000). 11 U.S.C. § 524(f) does not, however, answer the question before the Court. The subsection leaves open the issue of whether a creditor's acceptance or retention of a voluntary payment would violate other provisions within the Code.
The practical implications of the Debtor's argument, however, convince this Court that the Debtor's interpretation of the law is incorrect. The Debtor argues that, although the Code might allow a creditor to accept a voluntary payment, the creditor must hold the funds and allow a debtor to recover them on request. The Court sees a large problem with the practicalities of this interpretation: it would be unclear at what point a creditor could permissibly apply the funds to its claim. Like the automatic stay, the discharge injunction prohibits "any act, to collect or recover" from the debtor on account of a dischargeable debt. 11 U.S.C. § 524(a)(3). If applying the funds to a creditor's claim before a discharge order is an "act to collect... or recover a claim" and violates the automatic stay under § 362(a)(6), then, given the similar language in the two subsections, applying the funds after the discharged order would also violate § 524(a)(3). Therefore, under the Debtor's interpretation, applying the funds to the creditor's claim at any point after filing the petition would be impermissible under the Code. This cannot be Congress's intent and the Court will not interpret the Code to require a creditor to indefinitely hold funds that a debtor voluntarily gave to that creditor. See U.S. v. Ballinger , 395 F.3d 1218, 1238 (11th Cir. 2005) ("[A court] need not and should not countenance an interpretation of statutory language that leads to absurd or futile results[.]") (quoting EEOC v. Commercial Office Products Co. , 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) ) (internal quotations omitted).
At least two cases have held that a creditor's application of payments to a pre-petition claim can be the sole basis for finding a violation of the automatic stay. The unique fact patterns in those cases, which are distinct from this case, seemingly called those courts to consider the policies underlying the automatic stay as expressed in the Williford case supra . Those policy considerations are not present in this case. For that reason, the Court is unpersuaded that these cases should change the outcome here.
The holding in Krivohlavek v. Boys Town Fed. Credit Union, 405 B.R. 312 (8th Cir. BAP 2009) supports the first of Williford's policy goals: "relieving the debtor from added financial pressure during the pendency of bankruptcy proceedings." 294 Fed. Appx. at 521. There, the debtor agreed to a voluntary payroll deduction *215 where his employer deducted $267.98 from his wages and deposited the funds in the debtor's account at a credit union. Prior to filing the petition, the debtor agreed to allow the credit union to deduct $187.98 from the account to pay instalments on a vehicle loan. Many months after the filing, the deductions from the debtor's paycheck remained and the credit union continued to withdraw from the account, although the debtor stated her intention to surrender the vehicle. The debtor filed an action to recover the funds paid to the creditor and the court ruled in favor of the debtor. The court found that, although the distribution of the debtor's wages to her account with the credit union was voluntary and not a violation of the stay, the application of those funds to the credit union's claim on the surrendered vehicle violated the stay. The credit union's continued application of deposit funds to its claim, the court found, was an act to recover or collect on the pre-petition debt. Clearly, allowing a creditor to apply funds in the Debtor's account to enforce a pre-petition agreement subjects a debtor to the type of "financial pressure" Congress intended the automatic stay to prevent. These, however, are not the circumstances in this case. The Debtor paid these funds voluntarily to the Creditor.
The second case involves a creditor's use of bankruptcy estate assets. In Gordon v. Taylor , the Chapter 7 Trustee sought damages for acts by the debtor and a mortgage creditor for violating the automatic stay. 430 B.R. 305, 309. There, the debtor sold real estate and used the proceeds to satisfy the mortgage creditor's lien on the property. The sale was completed without a court order and after the trustee announced his intention to avoid the mortgage creditor's security interest in the transferred real estate. Nevertheless, the mortgage creditor received the funds from closing and applied those funds to its claim against the debtor and the property. The court found that, although the debtor's payment of the funds on closing was voluntary and not a violation of the automatic stay, the mortgage company's application of the funds to the claim was a violation. Id. at 312-313. The permanence of the creditor's application and the preferential payment the creditor received particularly worried the court. Id. Given the impact on the distribution of estate property, the Court's holding seemingly supports the second policy goal announced in the Williford case: "protecting creditors by preventing the premature disbursement of the bankruptcy debtor's estate." 294 Fed. Appx. at 521.
The Debtor's payment in this case was neither property of the estate nor a deduction according to a pre-petition debt servicing agreement. The Debtor made the payment voluntarily with his own funds. Therefore, the rulings in the Taylor and Krivohlavek cases are not applicable and the Court sees no reason to stray from the interpretation of the Code explained above.
Finally, the Debtor presented a second argument for why First Franklin's actions violated the automatic stay. He argues that, to accept his post-petition payment on a pre-petition account, First Franklin was required to give the disclosures listed in § 524(k). In making this argument the Debtor cites Gibbons v. First Citizens Nat'l Bank and Americorp Fin. LLC v. Schwarz . Respectively , 16-11243, 2016 Bankr. LEXIS 4269 (Bankr. W.D. Tenn. Dec. 13, 2016) & 09-100206-8-SWH, 2016 Banrk. LEXIS 4432 (Bankr. E.D.N.C. Dec. 22, 2016). Without giving these disclosures, the Debtor argues Frist Franklin violated the automatic stay. The Court is likewise unpersuaded by this argument.
An agreement between a debtor and a holder of a claim regarding "a debt *216 that is dischargeable in a case under this title" must provide the disclosures enumerated in § 524(k). See 11 U.S.C. § 524(c)(2). This requirement applies broadly to any agreement where the Debtor commits future payments on an otherwise dischargeable debt. See EFS, Inc. v. Mercer (In re Mercer) , 13-30006-WRS, 2013 WL 3367253, *3, 2013 Bankr. LEXIS 2727 *9 (Bankr. M.D. Ala. July 5, 2013) (holding a state court stipulation that did not comply with § 524(c) was not enforceable because it waived the discharge of a dischargeable claim and committed the debtor to future payments). But, the disclosure obligations only arise when the debtor agrees to make future payments on an otherwise dischargeable claim. The effect of failing to comply with the subsection confirms its limited application to agreements regarding future payments and defeats the Debtor's argument that failing to give these disclosures is a violation of the automatic stay. Rather than creating a cause of action for violating the automatic stay or discharge injunction, a failure to provide disclosures only makes the agreement unenforceable. 11 U.S.C. § 524(c) ; see also Americorp Fin. LLC v. Schwarz , 2016 Bankr. LEXIS 4432 *11 (holding forbearance agreement where the debtor promised to pay a discharged debt was unenforceable because the agreement failed to give the § 524(k) disclosures). A one-time payment on a claim would not benefit from a provision ensuring its enforceability. Such a payment is fully executed and finalized. Moreover, to hold that a one-time voluntary repayment requires disclosures would ignore 11 U.S.C. § 524(f). Therefore, the Court concludes that the Code does not require § 524(k)'s disclosures when the debtor makes a one-time voluntary payment on a dischargeable claim.
CONCLUSION
First Franklin's retention and application of funds voluntarily paid by the Debtor did not violate the automatic stay. Finding the creditor's actions did would unreasonably limit Code sections allowing a debtor to voluntarily repay a debt with non-bankruptcy estate funds. Further, there are no important policy implications that would direct this Court to consider the application of these funds a violation of the automatic stay. Accordingly, the Court will enter a consistent order denying the Debtor's Motion for Contempt.

Pursuant to Fed. Rule of Bank. Proc. 7001, an action to recover property must be filed as an adversary proceeding. Because ultimately the Court does not find First Franklin violated the stay or impermissibly retained property of the estate, the Court does not need to address this procedural deficiency.

On the August 22, 2018 hearing date, the Court was to also hear the dispute regarding the avoidability of First Franklin's security interest. The parties agreed, however, that the Court should rule on the Motion before addressing the lien avoidance issue, as the Court's ruling in favor of Frist Franklin would moot the Debtor's lien avoidance motion.

Importantly, as the funds obtained from Kinetic were acquired after filing the petition, the funds are not property of the estate. See 11 U.S.C. § 361(a)(1) (stating the bankruptcy estate is comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case").

The subsection states "[n]othing contained in [§§ 524(c), 524(d) (which provide the requirements for an enforceable reaffirmation agreement) ] prevents a debtor from voluntarily repaying any debt." 11 U.S.C. § 524(f).